

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-2004

# Sullivan v. Allegheny

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4805

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Sullivan v. Allegheny" (2004). *2004 Decisions.* Paper 229.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/229

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 03-4805

MARY C. SULLIVAN, an individual;
RONALD M. PAGE,

Appellants

v.

COUNTY OF ALLEGHENY, PENNSYLVANIA;
JAMES RODDEY, as County Executive and Individually

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-00011)
District Judge: Hon. William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
October 8, 2004

BEFORE: SLOVITER, VAN ANTWERPEN and COWEN, Circuit Judges

(Filed October 14, 2004 )

OPINION

COWEN, Circuit Judge.

On January 3, 2000, a charter adopted by the voters of Allegheny County,

Pennsylvania changed that county's form of government from a three-commissioner

system to one comprised of a chief executive and council. As a result of this change, all staff positions in the three elected county commissioners' offices were eliminated. The action before us involves allegations that appellants Mary Kay Sullivan and Ronald M. Page, who occupied two non-political staff positions in outgoing commissioner Larry Dunn's office, were retaliated against for Dunn's failure to support incoming chief executive Jim Roddey in the previous general election, in violation of their First Amendment right to political association. Specifically, Sullivan and Page alleged that appellees Allegheny County and Jim Roddey, both in his individual capacity and in his official capacity as chief executive, prevented Sullivan and Page from securing employment in the Allegheny County clerk of courts' office because the two were or had been employees of Dunn. A jury trial was held on the matter, and, after the close of evidence, the District Court granted the defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). We have jurisdiction under 28 U.S.C. § 1291. Because we agree with the District Court that no evidence was presented that would permit a reasonable jury to find in favor of the plaintiffs, we will affirm.

We review <u>de novo</u> a district court's decision to grant a motion for judgment as a matter of law. See <u>Foster v. National Fuel Gas Co.</u>, 316 F.3d 424, 428 (3d Cir. 2003). Granting such a motion is proper only if "there is no legally sufficient basis for a reasonable jury" to find in favor of the non-moving party. In making this determination, the District Court "must draw all reasonable inferences in favor of the non-moving party,

2

and it may not make credibility determinations or waive evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000). Fed. R. Civ. P. 50(a)(1). "Federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1998) (internal quotations omitted). To make out a prima facie case of adverse employment action due to constitutionally-protected political association, plaintiffs must show that they held or were seeking positions with a public agency that do not require political affiliation, that they were engaged in constitutionally protected conduct, and their conduct was a substantial motivating factor in the employer's decision. Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997).

Sullivan and Page advanced what appear to be two distinct theories of their case at trial. Their first theory rested on the failure of the Allegheny County salary board under the old system of government to create positions for them in the clerk of court's office. Their second theory implicates George Matta, the incoming clerk of court, with failing to hire them for open staff positions within his office. Both theories were built around statements made by Roddey's campaign manager, Kent Gates. Sullivan and Page presented evidence of conversations in which Gates told Dunn's chief-of-staff that no positions would be available for former Dunn employees in the new administration, and

3

told Matta's chief-of-staff that Matta should "give up" on his plans to employ Sullivan and Page because former Dunn employees were not going to be "taken care of." We find that Sullivan and Page's first theory fails because they presented no evidence that the salary board based its action on their constitutionally-protected conduct, and that their second theory fails because they have not established either that positions for which they were qualified existed in the clerk of court's office or that Matta based any adverse hiring decision on constitutionally-protected conduct.

This Court recognizes that viable claims asserting political retaliation can be maintained even if the employee and employer are affiliated with the same political party. See Robertson v. Fiore, 62 F.3d 596, 600 (3d Cir. 1995). However, we do not find a meritorious cause of action under the facts of this case.

The uncontroverted evidence at trial established that, under the old system of government in Allegheny County, the clerk of courts could not independently create new positions in his office. The creation of new positions was the responsibility of the salary board, which was comprised of the three commissioners, the county controller, and, for situations involving the creation of positions within the clerk of courts' office, the clerk of courts. At the final meeting of the salary board in December 1999, Dunn made a motion to create a secretary position and a constable coordinator position in the clerk of court's office. The motion was not seconded, and so the positions were not created. Neither Roddey nor Matta occupied positions in the Allegheny County government at that

4

time; in fact, the outgoing clerk of courts failed even to show up at the salary board meeting. None of the evidence at trial showed that any of the voting members of the salary board failed to second Dunn's motion because he did not support Roddey for chief executive in the general election. In fact, there was no evidence whatsoever that either Roddey or Gates had lobbied members of the salary board with regard to the vote, other than Gates' vague assertion that the "only two people that make decisions about who stays and who goes are Jim Roddey and me." This bare statement is insufficient as a matter of law to impute impermissible motive to any member of the salary board with respect to the decision not to create the positions in question.

The absence of evidence that secretary and constable coordinator positions were available in Matta's office belies Sullivan and Page's argument that they have satisfied the first element of their prima facie case. The only evidence introduced at trial as to open positions in the clerk of court's office after the government transition was through Carmen Torockio, the county's budget director, who testified that four managerial positions remained open during the first two weeks of Matta's tenure. No evidence was adduced, however, that would show that either plaintiff was qualified for one of the open positions. As to Sullivan, the sole piece of evidence that a secretarial position did become available at some point is Sullivan's unsupported testimony that Dunn told her at the end of January 2000 that he had called Matta's office and learned that Matta had already hired a secretary. Although the defendants did not object to the introduction of this obvious

double hearsay evidence, we find that Sullivan's statement constitutes too slender a reed upon which a jury might reasonably infer that a secretarial position was open sometime in January. Plaintiffs' counsel never called Matta as a witness, never questioned Matta's chief-of-staff about a secretarial position having been filled in January, and never introduced any documentary evidence to that effect. Without such a proffer of at least reasonably reliable evidence that positions existed for which Sullivan and Page were qualified, we find that no reasonable jury could have ruled in their favor.

Furthermore, even if Sullivan and Page had shown that such positions existed, there is simply no evidence of impermissible motive on Matta's part. Matta was constrained in his ability to hire either Sullivan or Page if appropriate positions were not created in his office, and the salary board did not create secretary and constable coordinator positions in December 1999. Although Sullivan and Page presented evidence with regard to the funding of existing positions after the change in government, they presented no evidence as to how new positions were created after the transition or how existing positions might be converted to new ones. Therefore, there is no basis for their assertion that Roddey exercised any influence whatsoever on Matta's hiring decisions. The contention that Roddey used his ability to affect the county budget (including the budget for the clerk of court's office) as leverage to intimidate Matta into not hiring former Dunn employees is mere speculation. Roddey had no authority over Matta with regard to the latter's staff, and a jury could not reasonably impute impermissible motive

6

to Matta based upon the statements made by Kent Gates.

Because Sullivan and Page failed to introduce evidence sufficient to satisfy the requirements of a <u>prima</u> <u>facie</u> case of employment discrimination based on constitutionally-protected political association, we find that the District Court did not err in granting the defendants' Rule 50 motion for judgment as a matter of law.

For the foregoing reasons, the judgment of the District Court entered on November 19, 2003, will be affirmed.